IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FREDDIE LEE WILLIAMSON,

    Petitioner,                    No. 2:11-cv-1083 JAM KJN P

   vs.

M. McDONALD,

    Respondent.                 FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

      Petitioner is a state prisoner, proceeding without counsel, with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenged his 2008 conviction on charges of possession for sale of methamphetamine and transportation of methamphetamine, and the sentence of 25 years to life in prison.  Petitioner claimed that he sustained ineffective assistance of trial and appellate counsel, in violation of the Sixth Amendment; that his sentence violated the Eighth Amendment prohibition against cruel and unusual punishment; and that the trial court erred in denying petitioner's motion to suppress evidence under the Fourth Amendment.  After careful review of the record, this court concludes that the petition should be denied.

////

II. <u>Procedural History</u>

On March 26, 2008, petitioner was convicted of possession of methamphetamine for sale, and transportation of methamphetamine. Following a bifurcated hearing, the jury found petitioner had four prior serious felony convictions within the meaning of California's Three Strikes Law. Petitioner was sentenced to 25 years to life in state prison.

Petitioner appealed the conviction to the California Court of Appeal, Third Appellate District. (Respondent's Lodged Document ("LD") 1.) The Court of Appeal affirmed the judgment on August 3, 2009. (LD 1.)

Petitioner filed a petition for review in the California Supreme Court. (LD 4.) The California Supreme Court denied review on November 10, 2009. (LD 5.)

Petitioner filed various post-conviction collateral actions in state court, all of which were denied. (LD 6-11.)

On September 13, 2010, petitioner filed a petition for writ of habeas corpus in the California Supreme Court. (LD 12.) The California Supreme Court denied the petition on March 23, 2011, without comment. (LD 13.)

Petitioner filed the instant petition on April 21, 2011. (Dkt. No. 1.)

III. <u>Facts</u>[1]

The opinion of the California Court of Appeal contains the following factual summary of petitioner's offenses.

> On a November night in 2006, Officers Joseph Aguilar and Dave Gutierrez of the Citrus Heights Police Department pulled over a green Cadillac with a license plate lamp that did not illuminate the license plate. The Cadillac contained two occupants. [Petitioner] was the driver; a man named Jermyn Sanders was the passenger. When the Cadillac pulled over, Officer Aguilar noticed Sanders "lean forward towards the floorboard seat area." Officer Aguilar approached the driver's side window, explained the reason for the

---

[1] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in <u>People v. Williamson</u>, No. C058878 (August 3, 2009), a copy of which was lodged by Respondent as Lodged Document ("LD") 1 on August 25, 2011.

2

> stop and asked for [petitioner's] driver's license; Officer Gutierrez made contact with Sanders. Officer Gutierrez asked Sanders to get out of the car and mentioned to Officer Aguilar that Sanders was on parole. Officer Aguilar then asked [petitioner] if he was on probation, to which, [petitioner] responded, that he was also on parole. Officer Aguilar then asked [petitioner] to step out of the car and conducted a parole search. A knotted baggie containing 26.4 grams of methamphetamine was found in [petitioner's] left jacket pocket.
>
> Detective Michael Lee of the Citrus Heights Police Department testified that, in his expert opinion, the amount of methamphetamine found on [petitioner], and the corresponding price of such a quantity, indicated that the narcotic was possessed for purposes of sale.
>
> Jermyn Sanders testified for the defense. He explained that he and [petitioner] had worked together the day of the arrest, that there were several generic jackets that were worn by employees, and that he had borrowed one of those jackets earlier in the day. Later in the afternoon, when Sanders took his lunch break and borrowed [petitioner's] Cadillac to cash his paycheck, Sanders ran into a man who asked him to "hold something" for him. Sanders knew the man to be "notorious for smoking pot" and believed the "something" to be marijuana. Sanders told the man to: "Just put it in the car. It's open." Sanders then clarified that the man should put the substance either in the glove compartment or the jacket that he had left in the car, but to make sure to come back to get it. The man agreed. When Sanders emerged from the check cashing establishment 45 minutes later, he assumed that the man had already retrieved the "something" from the car, and drove back to work. Sanders left the jacket in the Cadillac. After work, Sanders and [petitioner] left together in [petitioner's] Cadillac; [petitioner] was wearing the jacket, but it did not occur to Sanders that the "something" surreptitiously stowed in the jacket would still be there. They were pulled over by law enforcement shortly thereafter.

(People v. Williamson, slip op. at 3-4.)

IV. Standards for a Writ of Habeas Corpus

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

3

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'") (internal citations omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S. Ct. 770, 786 (2011).

////

1  The court looks to the last reasoned state court decision as the basis for the state
2  court judgment.  Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).  If there is no reasoned
3  decision, "and the state court has denied relief, it may be presumed that the state court
4  adjudicated the claim on the merits in the absence of any indication or state-law procedural
5  principles to the contrary."  Harrington, 131 S. Ct. at 784-85.  That presumption may be
6  overcome by a showing that "there is reason to think some other explanation for the state court's
7  decision is more likely."  Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991)).

8  Where the state court reaches a decision on the merits but provides no reasoning
9  to support its conclusion, the federal court conducts an independent review of the record.
10  "Independent review of the record is not de novo review of the constitutional issue, but rather,
11  the only method by which we can determine whether a silent state court decision is objectively
12  unreasonable."  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  Where no reasoned
13  decision is available, the habeas petitioner has the burden of "showing there was no reasonable
14  basis for the state court to deny relief."  Harrington, 131 S. Ct. at 784.  "[A] habeas court must
15  determine what arguments or theories supported or, . . . could have supported, the state court's
16  decision; and then it must ask whether it is possible fairminded jurists could disagree that those
17  arguments or theories are inconsistent with the holding in a prior decision of this Court."  Id. at
18  786.

19  V.  Petitioner's Claims[2]

20  A.  Motion to Suppress

21  In his fourth claim, petitioner argued that the traffic stop resulting in the instant
22  conviction was pretextual because the officer did not ask petitioner any questions about the
23  traffic stop or check to see if petitioner had a valid driver's license, registration or insurance on
24  the vehicle.  Petitioner contended that the trial court erred in denying petitioner's motion to

---

26  [2] The claims are analyzed in a different order than raised in the petition.

5

suppress evidence taken during this traffic stop.  Respondent argued that this claim is barred under Stone v. Powell, 428 U.S. 465, 481-82 (1979).

The California Court of Appeal for the Third Appellate District rejected petitioner's claim in a reasoned decision on direct appeal (LD 1 at 4-6), and the California Supreme Court denied review (LD 6).

This claim is not cognizable in a federal habeas corpus proceeding.  The United States Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."  Stone v. Powell, 428 U.S. 465, 494 (1976).  Thus, a Fourth Amendment claim can only be litigated on federal habeas where petitioner demonstrates that the state did not provide an opportunity for full and fair litigation of the claim; it is immaterial whether the petitioner actually litigated the Fourth Amendment claim.  Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996); Gordan v. Duran, 895 F.2d 610, 613 (9th Cir. 1990).

The issue before this court is whether petitioner had a full and fair opportunity in the state courts to litigate his Fourth Amendment claim, not whether the state courts correctly disposed of the Fourth Amendment issues tendered to them or even whether the claim was correctly understood.  See Siripongs v. Calderon, 35 F.3d 1308, 1321 (9th Cir. 1994).  The Ninth Circuit has concluded that California provides criminal defendants with a full and fair opportunity to litigate their Fourth Amendment claims through a motion to suppress remedy provided by California Penal Code § 1538.5, which establishes a specific mechanism for defendants to seek the suppression of evidence on the ground that it was obtained through unconstitutional means.  See Gordon, 895 F.2d at 613; see also Locks v. Summer, 703 F.2d 403, 408 (9th Cir. 1983).

Here, petitioner's defense attorney filed a motion to suppress on October 2, 2007. (CT 174-77.)  The trial court heard the motion to suppress on March 20, 2008, and denied the

1  motion by oral ruling. (CT 191.) Petitioner used the opportunities afforded him to have the trial
2  court's ruling reviewed within the California judicial system through his arguments on appeal
3  setting forth his present claim. The California Court of Appeal addressed petitioner's present
4  claim in a reasoned decision and denied the claim on the merits. The California Supreme Court
5  denied review.

6          The fact that petitioner was able to raise this claim at multiple levels of the
7  California court system and to have the claim considered on the merits compels the conclusion
8  that the Stone doctrine applies in this case. See Locks, 703 F.2d at 408 (when petitioner litigated
9  the search and seizure issue in the trial court and the appellate court, and also raised the issue
10 before the California and United States Supreme Courts, petitioner received a "full and fair
11 consideration of his Fourth Amendment claim"); see also Terronova v. Kincheloe, 912 F.2d
12 1176, 1178-79 (9th Cir. 1990) (the "extent to which [Fourth Amendment] claims were briefed
13 before and considered by the state trial and appellate courts" is a consideration in determining
14 whether petitioner had the opportunity for a full and fair litigation of those claims).

15         Thus, petitioner had a full and fair opportunity to litigate his Fourth Amendment
16 claim in state court. Accordingly, petitioner's fourth claim is barred.

17              B.  Cruel and Unusual Punishment

18         In his second claim, petitioner argued that his 25 years to life sentence was grossly
19 disproportionate to the crime of transporting "a small amount" of methamphetamine (26.4
20 grams), and violated the Eighth Amendment prohibition against cruel and unusual punishment.
21 (Dkt. No. 1 at 6.)

22         There is no reasoned rejection of this claim by a state court. The California
23 Supreme Court denied this claim without comment. (LD 13.)

24         The Supreme Court has held, in the context of AEDPA review of a California
25 Three Strikes Law sentence, that the relevant, clearly established law regarding the Eighth
26 Amendment's proscription against cruel and unusual punishment is a "gross disproportionality"

7

principle, the precise contours of which are unclear and applicable only in the "exceedingly rare" and "extreme" case. Lockyer v. Andrade, 538 U.S. 63, 73-76 (2003) (discussing decisions in Harmelin v. Michigan, 501 U.S. 957 (1991), Solem v. Helm, 463 U.S. 277 (1983), and Rummel v. Estelle, 445 U.S. 263 (1980)); Ewing v. California, 538 U.S. 11, 23 (2003). "Successful challenges to the proportionality of particular sentences will be exceedingly rare." Solem, 463 U.S. at 289-90.

Generally, the Supreme Court has upheld prison sentences challenged as cruel and unusual, and in particular, has approved recidivist punishments similar to or longer than petitioner's 25 years to life sentence, for offenses of equivalent or lesser severity. See Andrade, 538 U.S. at 77 (denying habeas relief on Eighth Amendment disproportionality challenge to Three Strikes sentence of two consecutive terms of 25 years to life for stealing $150.00 in videotapes when petitioner had a lengthy but nonviolent criminal history); Harmelin, 501 U.S. at 1008-09 (mandatory life sentence without parole for first offense of possession of more than 650 grams of cocaine is not so disproportionate as to violate the Eighth Amendment); Hutto v. Davis, 454 U.S. 370, 374-75 (1982) (per curiam) (upholding non-recidivist sentence of two consecutive 25 prison terms for possession of nine ounces of marijuana and distribution of marijuana); cf. Solem, 463 U.S. at 280-81 (sentence of life imprisonment without possibility of parole for seventh nonviolent felony violates Eighth Amendment).

Moreover, in cases arising on habeas review following the Supreme Court's decisions in Andrade and Ewing, the Ninth Circuit has frequently rejected Eighth Amendment challenges to California's Three Strikes Law sentences. See, e.g., Nunes v. Ramirez-Palmer, 485 F.3d 432, 439 (9th Cir. 2007) (sentence of 25 years to life for crime of petty theft with a prior did not offend the Constitution where petitioner had extensive and serious felony record); Taylor v. Lewis, 460 F.3d 1093, 1101-02 (9th Cir. 2006) (no Eighth Amendment violation where petitioner with prior offenses involving violence was sentenced to 25 years to life for possession of .036 grams of cocaine base); Rios v. Garcia, 390 F.3d 1082, 1086 (9th Cir. 2004) (sentence of

25 years to life for offense of petty theft with a prior imposed on petitioner with two prior robbery convictions was not objectively unreasonable); cf. Ramirez v. Castro, 365 F.3d 755, 775 (9th Cir. 2004) (finding that habeas relief was warranted in "exceedingly rare" case where petitioner with minimal criminal history and no prior state prison sentence received a Three Strikes sentence for offense of petty theft with a prior); Gonzalez v. Duncan, 551 F.3d 875 (9th Cir. 2008) (life sentence under California's Three Strikes law, triggered by a failure to register as a sex offender, violated the Eighth Amendment proscription against cruel and unusual punishment because there was no "rational relationship" between a failure to register and the probability defendant would recidivate as a violent criminal or sex offender).[3]

   Here, petitioner was sentenced to 25 years to life in prison for possession of methamphetamine for sale, and transportation of methamphetamine, and a finding that he had previously suffered four prior serious felony convictions for two robberies, lewd acts with a child, and an attempted robbery. (CT 221-24.)  First, petitioner's sentence was less than that of the defendants in Andrade and Harmelin, and allows for the possibility of parole unlike in Solem. See Andrade, 538 U.S. at 74; Taylor, 460 F.3d at 1098 (eligibility for parole, albeit after 25 years, made California Three Strikes sentence "considerably less severe than the one invalidated in Solem"). Second, as argued by respondent, petitioner transported a larger amount of an illegal drug than Taylor possessed. Taylor, 460 F.3d at 1102. Third, petitioner's triggering offense of transportation and possession for sale of 26.4 grams of methamphetamine was more serious than Taylor's possession of .036 grams, or 36 milligrams, of cocaine base, as well as the petty thefts with a prior involved in Ewing, Andrade, Nunes, and Rios. Fourth, petitioner sustained four prior serious felony convictions as compared to Taylor's two prior serious or violent felonies. Id.

---

[3] Petitioner argued in state court that his sentence was disproportionate, relying on Gonzalez, 551 F.3d at 875. However, petitioner's case differs from Gonzalez because petitioner's triggering offenses, transportation and possession for sale of methamphetamine, were not passive and harmless offenses as a failure to register was characterized by the Ninth Circuit. Id., 551 at 890.  Thus, this court finds petitioner's case is more similar to Taylor, 460 F.3d at 1093, than to Gonzalez.

at 1098. Thus, petitioner's criminal history was similar to or more serious than the criminal histories considered by the Supreme Court in approving the recidivist sentences at issue in Andrade (three burglaries) and Ewing (three burglaries and one robbery).

For all of the above reasons, and in light of controlling jurisprudence, this court cannot find that petitioner's sentence is grossly disproportionate to his commitment offense. Thus, the state court's rejection of this claim was not contrary to or an unreasonable application of federal law. Accordingly, petitioner's Eighth Amendment claim should be rejected.

### C. Ineffective Assistance of Trial Counsel

In petitioner's third ground, he raised two claims alleging that he sustained ineffective assistance of trial counsel.

The Sixth Amendment guarantees the effective assistance of counsel. The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Id. at 687-88. After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).

Second, a petitioner must establish that he was prejudiced by counsel's deficient performance. Strickland, 466 U.S. at 693-94. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.; see also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000). The court need not address both components if petitioner makes an insufficient showing on one. Strickland, 466 U.S. at 697. As both prongs of the Strickland

test must be satisfied to establish a constitutional violation, failure to satisfy either prong requires that an ineffective assistance claim be denied. See id., 466 U.S. at 697 (no need to address deficiency of performance if prejudice is examined first and found lacking); Rios v. Rocha, 299 F.3d 796, 805 (9th Cir. 2002) ("[f]ailure to satisfy either prong of the Strickland test obviates the need to consider the other").

In other words, a reviewing court is not required to address the two parts of the Strickland test in its ruling. See Strickland, at 697. As the Court stated in Strickland:

> In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.

Id.

In Harrington, the Supreme Court emphasized the application of Strickland to ineffective assistance of counsel claims and its relationship to § 2254(d)'s deferential standard of review. Id., 131 S. Ct. at 770. "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable[,]" which is a different question from "asking whether defense counsel's performance fell below *Strickland's* standard." Harrington, 131 S. Ct. at 785.

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both "highly deferential," . . . and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

Harrington, 131 S. Ct. at 788 (citations omitted).

////

In assessing an ineffective assistance of counsel claim "[t]here is a strong presumption that counsel's performance falls within the wide range of professional assistance." Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (citation omitted).  Additionally, there is a strong presumption that counsel "exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citation omitted).

      i. Pretrial investigation

Petitioner claimed defense counsel failed to perform pretrial investigation, which hindered his ability to cross-examine witnesses.

The last reasoned rejection of this claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal.  The state court addressed some of petitioner's claims as follows:

> [Petitioner] claims that he received ineffective assistance of counsel because his attorney (1) only visited him three times in 18 months, two of those visits concerning payment and not the case itself, (2) did not communicate with [petitioner] concerning the defense strategy, (3) did not investigate the case, and (4) refused to file a motion to obtain the police dispatch recording and audio and video recording taken from the police vehicle during the stop.
>
> In asserting ineffective assistance of counsel, the burden is on [petitioner] to establish both that counsel's representation fell below prevailing professional norms and that, in the absence of counsel's failings, a more favorable result was reasonably probable. (Cf. People v. Ledesma (1987) 43 Cal.3d 171, 215-218; Strickland v. Washington (1984) 466 U.S. 668, 694 [80 L.Ed.2d 674, 698].) On review, we are required to exercise deferential scrutiny, i.e., we may not second-guess counsel's reasonable tactical decisions. (People v. Ledesma, supra, 43 Cal.3d at p. 216.)  We examine the record to determine if there is any explanation for the challenged aspects of representation. If the record sheds no light on why counsel failed to act in the manner challenged, the case is affirmed "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation. . . ." (People v. Pope (1979) 23 Cal.3d 412, 426, overruled on other grounds in People v. Berryman (1993) 6 Cal.4th 1048, 1081, fn. 10, overruled on other grounds in People v. Hill (1998) 17 Cal.4th 800, 823, fn. 1.)
>
> [Petitioner's] claims fail because they are based largely on facts outside the appellate record. (People v. Lucero (2000) 23 Cal.4th

> 692, 728-729.) The record does not indicate what discussions took place between counsel and [petitioner]. Nor does it indicate what issues may have been taken into consideration in reaching the decision not to seek the dispatch recording and patrol car video recording from the stop. Nor does the record reflect that counsel was given an opportunity to explain the reasons for the challenged conduct. As [petitioner's] assertion of ineffective assistance of counsel is based on facts outside the appellate record, it is not cognizable on appeal. (See People v. Pope, supra, 23 Cal.3d at p. 426.)
>
> [Petitioner] further asserts that counsel was ineffective because he did not make any objections during trial or argue any motions. This assertion is simply belied by the record. [Petitioner's] attorney made and argued a motion to dismiss, brought a motion to suppress evidence, actively cross-examined the People's witness, and also brought and argued a motion to dismiss [petitioner's] prior convictions. Moreover, [petitioner's] attorney was incredibly active at trial, actively cross-examining the People's witnesses, thoroughly examining Jermyn Sanders on behalf of the defense, and delivering a detailed and eloquent closing argument to the jury.
>
> On this record, we cannot find [petitioner] was ineffectively represented by counsel.

(LD 1 at 4-6.)

Petitioner did not identify what investigation defense counsel allegedly failed to perform, or name the witnesses such investigation would have produced to assist in cross-examination. Moreover, petitioner failed to demonstrate how such improved cross-examination would have changed the outcome here. Petitioner failed to demonstrate that the state court's application of Strickland was unreasonable. Thus, this claim should be rejected.

### ii. Right to Testify

Petitioner also claimed that defense counsel denied petitioner the right to testify.

There is no reasoned state court decision on this claim; the California Supreme Court denied this claim without comment. (LD 13.)

The right of a criminal defendant to testify in his own defense is well established and is a "constitutional right of fundamental dimension." United States v. Pino-Noriega, 189 F.3d 1089, 1094 (9th Cir. 1999) (internal quotation omitted); see also Rock v. Arkansas, 483

13

U.S. 44, 51 (1987). A criminal defendant can waive his right to testify at trial, so long as the waiver is knowing and voluntary. Pino-Noriega, 189 F.3d at 1094. However, "while waiver of the right to testify must be knowing and voluntary, it need not be explicit." Id. at 1094. A trial court "has no duty to affirmatively inform defendants of their right to testify, or to inquire whether they wish to exercise that right." Id. at 1094-95 (citation omitted). "[W]aiver of the right to testify may be inferred from the defendant's conduct and is presumed from the defendant's failure to testify or notify the court of his desire to do so." United States v. Joelson, 7 F.3d 174, 177 (9th Cir. 1993). Although the right to testify at a criminal trial is well-established, the right is not without limitation and "may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process ." Rock, 483 U.S. at 55 (internal quotation marks omitted).

First, as noted by respondent, petitioner failed to provide any evidence in support of this claim. Petitioner claimed he was denied the right to personally make the decision to testify when his defense attorney "did not inform the judge" that petitioner wanted to take the stand. (Dkt. No. 1 at 6.) However, petitioner cited no authority for his view that defense counsel was required to so inform the trial court.

Second, petitioner's allegation that defense counsel prevented petitioner from testifying is refuted by the record. After the verdicts were rendered, the court reminded petitioner that during voir dire the judge told petitioner he "had the absolute right to testify or not to testify." (RT 258.) Defense counsel informed the court that petitioner expressed a desire to testify after the testimony of co-defendant Sanders, but that defense counsel advised petitioner "it wasn't advisable." (Id.) The trial court explained to petitioner that it was a tactical decision by defense counsel that petitioner should not testify, and that petitioner went along with that decision. (Id.) The trial court informed petitioner he could raise the issue in a motion for new trial. (Id.) No motion for new trial was filed. (CT 230-82.)

////

Thus, the record demonstrates that petitioner knew he had a right to testify at his trial but failed to exercise it. Under the circumstances presented here, there was no violation of petitioner's right to testify.

Therefore, for all of the above reasons, the state court's rejection of petitioner's third claim for relief was neither contrary to, nor an unreasonable application of, controlling principles of United States Supreme Court precedent. Petitioner's third claim for relief should be denied.

### D. Ineffective Assistance of Appellate Counsel

In his first claim, petitioner claimed that appellate counsel was ineffective because he failed to argue on direct appeal that petitioner's sentence was cruel and unusual.

The Strickland standards apply to appellate counsel as well as trial counsel. Smith v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989). However, an indigent defendant "does not have a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751 (1983). Counsel "must be allowed to decide what issues are to be pressed." Id. Otherwise, the ability of counsel to present the client's case in accord with counsel's professional evaluation would be "seriously undermined." Id. There is no obligation to raise meritless arguments on a client's behalf. See Strickland, 466 U.S. at 687-88 (requiring showing of deficient performance and prejudice). In order to demonstrate prejudice here, petitioner must demonstrate that, but for counsel's errors, he probably would have prevailed on appeal. Miller, 882 F.2d at 1434, n.9.

The last reasoned decision on this claim was issued by the Sacramento County Superior Court on April 5, 2010, and stated:

> A sentence of 25 years to life imprisonment for grand theft - a crime that could be sentenced as a misdemeanor or a felony - under the Three Strikes Law did not violate the Eighth Amendment's prohibition against cruel and unusual punishment. (Ewing v. California (2003) 538 U.S. 11, 30.) A sentence may be cruel and

15

> unusual punishment if it is grossly disproportionate to the offense, but this is limited only to extraordinary cases. (<u>Lockyer v. Andrade</u> (2003) 538 U.S. 63, 77.)
>
> Petitioner also alleges that appellate counsel should have argued that Petitioner's sentence of 25 years to life for transportation of 26.4 grams of methamphetamine was cruel and unusual punishment. Petitioner cites <u>Gonzalez v. Duncan</u> (9th Cir. 2008) 551 F.3d 875 for the proposition that a Three Strike sentence may only be imposed when the prior strike(s) bear some relationship to the current offense and to the defendant's likelihood of re-offending. However, Gonzalez's offense, the failure to update his annual sexual registration, was a "passive, harmless, and technical violation of the law." (551 F.3d at 885.) Petitioner's narcotics offenses were not. And contrary to Petitioner's contention that he possessed merely a "trace" amount of narcotics, the amount was sufficient to constitute possession for sale. Both offenses were felonies; in addition, Petitioner was previously convicted of four prior serious felonies. Compared to the conduct in <u>Ewing</u> and <u>Andrade</u>, both of which upheld sentences under the Three Strikes Law, Petitioner's current offenses and priors are more serious. Since Petitioner has not shown that raising the issue on appeal would likely have resulted in a different outcome, he has not shown that he received ineffective assistance of counsel.

(LD 9 at 2.)

Here, petitioner failed to address or demonstrate that had appellate counsel challenged petitioner's sentence on appeal, that the appeal would have been granted. Thus, petitioner failed to demonstrate prejudice under <u>Strickland</u>, and this claim should be rejected. In any event, the state superior court properly found that petitioner's current offenses and prior criminal history are more serious than the defendants in <u>Ewing</u> and <u>Andrade</u>. The state court also properly found that petitioner's reliance on <u>Gonzalez</u> was unavailing given the nature of petitioner's triggering offenses. Based on United States Supreme Court authority, appellate counsel was not ineffective for failing to raise on appeal an Eighth Amendment challenge to petitioner's 25 year sentence. See <u>Strickland</u>, 466 U.S. at 687-88.

Accordingly, the state court's rejection of petitioner's first claim for relief was neither contrary to, nor an unreasonable application of, controlling principles of United States Supreme Court precedent. Petitioner's first claim for relief should be denied.

VI. <u>Conclusion</u>

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." If petitioner files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). Any response to the objections shall be filed and served within fourteen days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 11, 2012

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

will1083.157